# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 06-3199

SULTANA ALIMI,

*Petitioner*,

*v.*

ALBERTO R. GONZALES,

*Respondent*.

_____

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A47-279-565

_____

ARGUED APRIL 10, 2007—DECIDED JUNE 6, 2007

_____

Before BAUER, POSNER and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Sultana Alimi, a lawful permanent resident of the United States, was ordered removed by an immigration judge ("IJ") on June 8, 2005, on the ground that she had engaged in alien smuggling. The Board of Immigration Appeals ("BIA" or "Board") adopted and affirmed the decision of the IJ. Ms. Alimi timely petitioned for review of the decision of the BIA. For the reasons set forth in this opinion, we deny the petition for review and affirm the decision of the BIA.

# I

# BACKGROUND

## A.

Ms. Alimi is a fifty-year-old ethnic Albanian, a native and citizen of Macedonia. She has been a lawful permanent resident since 2000, a status she obtained through her husband, a United States citizen. Ms. Alimi has one United States citizen daughter, Fazile, and two permanent resident sons. Ms. Alimi does not speak English and cannot read or write in her native language.

In February 2001, Ms. Alimi traveled to Macedonia. According to her testimony at the removal hearing, Ms. Alimi took the United States passport belonging to her daughter, Fazile, to Macedonia, for the purpose of assisting Arejta Saliu (née Imeri), the new wife of her nephew, to enter the United States by posing as Fazile. On the return trip, immigration officials took Ms. Alimi and Saliu aside and then separated them. When Saliu was questioned, she apparently first claimed to be Fazile Alimi, but recanted and admitted her identity. Ms. Alimi also was questioned. An interpreter, located in another city, provided interpretation services by telephone. Ms. Alimi's responses were typed simultaneously by her interviewing officer. According to the record created by that officer, Ms. Alimi admitted that the woman who had accompanied her on the return trip was not her daughter but her nephew's wife. Ms. Alimi told the officer that her nephew had requested her assistance in bringing his new wife to the United States. She further admitted that she had brought Fazile's passport to Macedonia in order to facilitate Saliu's entry. At her immigration hearing, Ms. Alimi also testified that the officer raised his voice to her and threatened that he would handcuff her if she did not tell the truth.

Notably, it appears from the record that Saliu was subject to expedited removal on the basis of fraud, but later received a waiver permitting her to return to the United States on the basis of her marriage and was granted permanent residency in 2003. Because Ms. Alimi was a permanent resident, she was placed in removal proceedings; the relief granted to Saliu on her later, lawful reentry to the United States was not available to Ms. Alimi in those proceedings.[1]

## B.

Based on the events at the airport in February 2001, immigration authorities sought the removal of Ms. Alimi by charging her with two grouds of removability: (1) having engaged in fraud to procure an immigration benefit, *see* 8 U.S.C. § 1182(a)(6)(C)(i) ("the fraud charge");[2] (2)

---

[1]  A discretionary waiver of inadmissibility for document fraud may be available to the spouse of a United States citizen or permanent resident, such as Saliu, when extreme hardship would result to the United States citizen spouse if the alien were not permitted to return; a more limited discretionary waiver is available for aliens such as Ms. Alimi, who are found inadmissible on a smuggling charge, and that waiver is available only when the smuggled alien is an immediate relative of the smuggler. *Compare* 8 U.S.C. § 1182(i) (waiver of fraud) with § 1182(d)(11) (waiver of smuggling).

[2]  8 U.S.C. § 1182(a)(6)(C)(i) provides:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission
>
> (continued...)

having knowingly encouraged, induced, assisted, abetted or aided another alien to try to enter the United States in violation of law, *see id.* § 1182(a)(6)(E)(i) ("the smuggling charge").[3] Ms. Alimi appeared in immigration court, represented by counsel, for two preliminary hearings.[4] The case then was scheduled for a merits hearing on September 24, 2004.

At the first merits hearing, counsel for the Department of Homeland Security ("DHS") began examining Ms. Alimi through a court-provided interpreter. After a few brief questions, the interpreter noted that she and Ms. Alimi were struggling to understand each other because they spoke different Albanian dialects. The IJ conferred with the parties, and, although neither counsel desired to continue with the hearing under the circumstances, the IJ suggested that they move forward for a brief period and then reassess the extent of the misunderstanding between the interpreter and Ms. Alimi. After a few more questions, the interpreter herself interrupted and said, "[t]his is just too difficult for

---

[2] (...continued)
into the United States or other benefit provided under this chapter is inadmissible.

[3] 8 U.S.C. § 1182(a)(6)(E)(i) provides:

Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible.

[4] At the second of these preliminary hearings, counsel for Ms. Alimi indicated that Ms. Alimi intended to "invoke her [] right not to testify against herself." A.R. at 64. She testified, however, without objection at the two subsequent sessions.

me. . . . I don't understand what, what she's saying." A.R. at 106. The IJ, therefore, terminated the testimony.

Before closing the hearing, the IJ discussed several remaining administrative matters with the parties. During this exchange, the Government offered into evidence the record of the questioning that took place during the airport interview. Ms. Alimi's attorney objected. He claimed that the proffered statement was hearsay, and, given the lack of a translator's certification, potentially was tainted by similar translation problems to those that had been encountered at the hearing. The attorney further claimed that Ms. Alimi had a right to an attorney during the airport interview and that the examining officers had an obligation to advise her of that right, citing 8 C.F.R. § 287.3; in the attorney's view, the absence of this advice, alongside the officer's threat to handcuff Ms. Alimi, amounted to coercion. The IJ reserved judgment, but informed the Government that it would be a "good idea" if the officer who took the statement were present at the next hearing. A.R. at 117. If he were not available, continued the IJ, an explanation for his absence ought to be provided to the court. The IJ then closed and recalendared the hearing for July 27, 2005. *See* A.R. at 254.

For reasons undisclosed by the record, the court moved up the hearing date to June 8, 2005. On the day of the hearing, the Government filed an emergency motion for a continuance. In the motion, the Government claimed that it had been prepared to proceed as originally scheduled on July 27, 2005, and had secured the availability of the inspecting officers to testify on that date. It had been unable, however, to secure those witnesses for the rescheduled June hearing: One of the witnesses was on detail in a Detroit location and the other was unavailable because he

was on family-related personal leave. *See* A.R. at 129, 193-94. The court denied the motion and proceeded with the hearing without the officers, but again reserved judgment on the admissibility of the airport statement.

Ms. Alimi and Saliu testified as to Saliu's attempt to enter the United States and the statements made to immigration officers at the airport. In her testimony, Ms. Alimi admitted taking Fazile's passport for the purpose of assisting Saliu with her entry to the United States. She testified, consistent with the record of her statement at the airport prepared by the inspecting officers, that she initially had told the officers that Saliu was her daughter, Fazile, but that she later told the officer that she had made a mistake and that Saliu was not her daughter. At the close of the testimony, the IJ admitted her airport statement, concluding that her testimony had not established that the statement either was coerced or was translated improperly sufficient to require the Government to respond with witnesses in support of its admission. A.R. at 180.

Ms. Alimi contested both charges of removability alleged by the Government. She did not, however, request any form of relief from removal in the event that the IJ found the charges sustained. At the conclusion of the hearing, the IJ held that Ms. Alimi was removable on the basis of the smuggling charge; he also determined, however, that the Government had not sustained its burden of proof on the fraud charge because Ms. Alimi had sought no immigration benefit *for herself* from her misrepresentations, as contemplated by the statute.[5] *See* 8 U.S.C. § 1182(a)(6)(C)(i).

---

[5]   In the oral decision on the record, the IJ found both charges sustained. *See* A.R. at 187. In the full decision, the IJ found the

(continued...)

In his written decision, the IJ found that the smuggling charge had been proven by Ms. Alimi's testimony. Despite her arguments to the contrary, the IJ found that Ms. Alimi's smuggling was premeditated: Her in-court testimony established that she had left the United States with Fazile's passport to bring it to Saliu and had made arrangements to travel into the United States with her pretending to be her mother. He rejected Ms. Alimi's claim that, because she was not the one to physically alter the passport by removing Fazile's picture and placing Saliu's in its stead, she was merely an "unwitting player," A.R. at 48; he instead found that her testimony established that she had full knowledge of the purpose for which she brought the passport. Accordingly, the IJ ordered Ms. Alimi removed to Macedonia.

Ms. Alimi timely appealed her removal order to the BIA. In her brief on appeal, Ms. Alimi claimed that her statement from the airport should not have been admitted because of potential difficulties in interpretation, coercion by the inspecting officer, fundamental unfairness in admitting the statement without producing the officer in court and failure of the officer to advise her of a right to counsel. Additionally, Ms. Alimi claimed that she provided no affirmative acts of assistance to Saliu in her attempt to enter the United States and, therefore, under an interpretation of the smuggling provision adopted by the Sixth Circuit in *Tapucu v. Gonzales*, 399 F.3d 736 (6th Cir. 2005), had not engaged in the sort of "surreptitious activity" necessary to support a smuggling charge. A.R. at 47. Finally, she claimed that, because Saliu's fraud eventually

---

[5]  (...continued)
fraud charge unsustained. *See* A.R. at 52. No party contends on appeal that the fraud charge was sustained.

was waived and she was admitted to the United States, Ms. Alimi's assistance in Saliu's initial attempt to enter should not result in Ms. Alimi's removal.

The BIA adopted, affirmed and supplemented the decision of the IJ. It first determined that there had been no due process violation in the manner in which translation services were provided at the removal hearings. Specifically, it noted that the IJ had continued proceedings in order to find a more appropriate interpreter and that, at the final hearing, no objections had been made to the interpreter's ability to understand Ms. Alimi. With the exception of a miscommunication in stating her address, the record reveals no problems with interpretation at the dispositive hearing. The Board then noted that, whatever the objections to the admission of the airport statement in evidence, Ms. Alimi had admitted that the statement was truthful during her testimony in court. It further noted that, in any event, the charge was supported by sufficient evidence even without the airport statement. The Board then noted that it did not accept Ms. Alimi's contention that she had engaged in no affirmative acts of assistance to Saliu; in its view, her testimony established otherwise. Finally, the Board stated that it had no authority to waive the alien smuggling charge because the smuggled alien, Saliu, had been admitted to the United States under a waiver that was not available to Ms. Alimi.[6]

---

[6] *See supra* note 1.

## II

## DISCUSSION

### A.

Ms. Alimi claims that she was denied her right to due process of law in her immigration proceeding. Although she couches her objections in various terms, Ms. Alimi summarizes them essentially as due process violations in the admitting of the airport statement and in failing to require the appearance of the officer who took her statement at the airport. We begin by noting that, when the Board adopts, affirms and supplements a decision of the IJ, we review the IJ's decision as supplemented by the BIA. *Pavlyk v. Gonzales*, 469 F.3d 1082, 1087 (7th Cir. 2006).

We review de novo an alien's claim that she was denied due process of law. *See Shymelskyy v. Gonzales*, 477 F.3d 474, 482 (7th Cir. 2007). To warrant a new immigration hearing on a due process claim, an alien must establish that she was prejudiced, that is, that the error likely affected the result of the proceedings. *Id.* Additionally, this court may consider only those contentions on which the alien has exhausted all administrative remedies available as of right. 8 U.S.C. § 1252(d)(1).

In cases claiming due process violations in immigration proceedings, we recently have reminded petitioners that proceedings which meet the statutory and regulatory standards governing the conduct of removal hearings, as a general rule, comport with due process. *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 884-85 (7th Cir. 2007). Accordingly, it is generally appropriate to assess "due process" challenges through the statutory and regulatory lenses in 8 U.S.C. § 1229a and 8 C.F.R. §§ 1240.1 and 1240.10.

**B.**

Ms. Alimi first submits that the failure of the IJ to make an explicit ruling on the admissibility of the airport statement deprived her of her right to "cross exam[ine] and in essence challenge the government's case against" her, in violation of 8 U.S.C. § 1229a(b)(4).[7] Petitioner's Br. at 17. Without citation to any authority, Ms. Alimi claims that the IJ was "under an obligation" to render a decision because Ms. Alimi believed her hearing statement was taken in order to oppose the admission of the statement rather than on the merits of the case. *Id.* at 18. In essence, she believed that she was testifying at the immigration equivalent of a hearing on a motion to suppress a statement as involun-

---

[7] 8 U.S.C. § 1229a(b)(4) provides:

> (4) Alien's rights in proceeding
>
> In proceedings under this section, under regulations of the Attorney General—
>
> (A) the alien shall have the privilege of being represented, at no expense to the Government, by counsel of the alien's choosing who is authorized to practice in such proceedings,
>
> (B) the alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government but these rights shall not entitle the alien to examine such national security information as the Government may proffer in opposition to the alien's admission to the United States or to an application by the alien for discretionary relief under this chapter, and
>
> (C) a complete record shall be kept of all testimony and evidence produced at the proceeding.

tary, not a proceeding to determine guilt or innocence. She claims that she would have exercised her privilege against "self-incrimination" had she known the testimony was on the merits. *Id.* at 19. In her view, such right was available because alien smuggling is a crime as well as a ground of inadmissibility.

We cannot accept Ms. Alimi's claim for several reasons. Although the admission of the statement was challenged before the BIA, Ms. Alimi did not claim in that proceeding that the IJ had an obligation to rule on the issue before proceeding with a hearing on the merits. We also note that there is nothing in the record to support her assertion that she *believed* that she was testifying on anything other than the merits of her claim. Finally, although she previously had indicated a desire not to testify, no objection was made to her testimony, which was offered as a part of the Government's case-in-chief and covered subjects that had nothing to do with the conduct of the airport hearing.

### 1.

Acknowledging that immigration proceedings are governed by a "looser standard of due process," *see Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004), and not by the rules of evidence, Ms. Alimi nevertheless submits that her airport statement was hearsay and that its use was "clearly and inherently unfair." Petitioner's Br. at 20. In her view, the immigration judge erred in admitting the statement without requiring the officer who took the statement to be present for cross-examination. This claim was presented to the BIA. In response, the Government contends that the only relevant procedural right afforded by § 1229a(b)(4) is the right to cross-examine witnesses; there is no affirmative duty on the part of DHS to present a witness.

Ms. Alimi points to no authority to support her view that a document's author must be present to satisfy the requisites of due process in immigration proceedings. Instead, she relies on *Olowo*, 368 F.3d 692, in which this court rejected a due process challenge to the admission of the *testimony* of an immigration inspector that the alien had challenged as inconsistent and unreliable. Although *Olowo* does state that the testimony, although hearsay, did not pose a due process problem in part because it was subject to cross-examination, it was addressing the claim that admission of hearsay statements, which *contradicted and undermined* the petitioner's own testimony and which the petitioner had characterized as unreliable, was fundamentally unfair. When Ms. Alimi's own testimony does not contradict the hearsay statement and, indeed, confirms its truth, its admission does not pose a due process problem for lack of cross-examination.[8]

Ms. Alimi has failed to demonstrate a statutory right to the officer's presence, nor has she established that his

---

[8] Ms. Alimi's further support for her contention is an unpublished disposition of this court, *Jung v. INS*, No. 92-3414, 1993 WL 269429 (7th Cir. July 16, 1993). Although the Federal Rules of Appellate Procedure recently have been amended to require the circuit courts to permit citation to unpublished decisions, the new rule only applies to unpublished decisions issued on or after January 1, 2007. Because Ms. Alimi relies on an unpublished decision from 1993, it cannot be cited to this court. *See* Fed. R. App. P. 32.1; Cir. R. 32.1(d) ("No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding."). We, therefore, decline to address her contentions based on *Jung*.

absence resulted in a proceeding that was both fundamen-
tally unfair and prejudicial.

**2.**

Ms. Alimi further contends that her due process rights
were violated through the introduction of the record of the
airport interview because those proceedings were rendered
unreliable by the Government's provision of an interpreter
that she could not understand. She relies upon our decision
in *Balogun v. Ashcroft*, 374 F.3d 492 (7th Cir. 2004), in
support of this argument. In that case, we discussed certain
standards for the reliability of airport interview records
used in immigration proceedings. In *Balogun*, however, we
considered the admissibility of statements made in airport
interviews that *contradicted* in-court testimony and there-
fore supported adverse credibility findings, or further
supported the immigration judge's assessment that an
asylum applicant did not fear persecution.[9]

---

[9] *Balogun v. Ashcroft*, 374 F.3d 492, 505 (7th Cir. 2004), quoted the
Second Circuit in *Ramsameachire v. Ashcroft*, 357 F.3d 169 (2d Cir.
2004), for the following reliability factors relevant to airport
testimony:

> First, a record of the interview that merely summarizes or
> paraphrases the alien's statements is inherently less reliable
> than a verbatim account or transcript. Second, similarly
> less reliable are interviews in which the questions asked
> are not designed to elicit the details of an asylum claim, or
> the INS officer fails to ask follow-up questions that would
> aid the alien in developing his or her account. Third, an
> interview may be deemed less reliable if the alien appears
> to have been reluctant to reveal information to INS officials

(continued...)

*Balogun* could support certain claims Ms. Alimi makes about reliability. This case does involve a language barrier and Ms. Alimi did not have the sort of educational background that might induce any comfort level with respect to her ability to deal with the immigration authorities. *See Balogun*, 374 F.3d at 505-06. In the record of the airport interview, Ms. Alimi appears to have acknowledged her understanding of the questions put to her. Nevertheless, at trial, she stated that she did not understand "most of [the] questions" asked, or the interpreter's dialect. A.R. at 144. She then stated that she responded to "what [she] was understanding [sic]." *Id.*

These factors in another case might be worthy of more pause. Here, however, it is difficult for Ms. Alimi to make a case for unreliability of the airport statement when she later admitted, in her own live testimony before the IJ, that the content of the airport statement was true and further admitted, once again, the facts contained in that earlier

---

[9]  (...continued)

because of prior interrogation sessions or other coercive experiences in his or her home country. Finally, if the alien's answers to the questions posed suggest that the alien did not understand English or the translations provided by the interpreter, the alien's statements should be considered less reliable. Examining the interview in light of these factors will focus the agency's inquiry on whether the record of the interview accurately reflects the alien's statements, whether the alien had a full opportunity to express him- or herself, and whether the alien's statements are likely to reflect his or her actual beliefs and fears.

*Balogun v. Ashcroft*, 374 F.3d 492, 505 (7th Cir. 2004).

airport statement.[10]

**3.**

Finally, Ms. Alimi claims that she had a procedural right, embodied in the regulations, to be informed of various rights in removal proceedings. *See* 8 C.F.R. § 1240.10(a)(1).[11]

---

[10] Ms. Alimi makes two additional claims relating to the unreliability of the airport statement. First, she states that she was not informed of her right to have an attorney present. She also claims that the statement was the product of coercion because the officer "raise[d] his voice," A.R. at 161, and informed her that she could be handcuffed. In any event, we need not pass on the substance of either of these claims where they simply support Ms. Alimi's contention that the record of the proceedings was unreliable; she cannot admit that she told the officers the truth and separately admit the salient facts included in the record while simultaneously urging that the record is unreliable.

[11] 8 C.F.R. § 1240.10(a) provides, in relevant part, that the immigration judge *shall*, in a removal hearing,

(1) Advise the respondent of his or her right to representation, at no expense to the government . . . ;

(2) Advise the respondent of the availability of free legal services provided by organizations and attorneys . . . ;

(3) Ascertain that the respondent has received a list of such programs, and a copy of appeal rights;

(4) Advise the respondent that he or she will have a reasonable opportunity to examine and object to the evidence against him or her, to present evidence in his or her own behalf and to cross-examine witnesses presented by the

(continued...)

The Government counters that Ms. Alimi failed to exhaust this claim, and that, consequently, this court may not review it. The Government's representation that this claim was not presented to the Board is supported by the record. In any event, even if we could review the merits of her claim, she has not established that a violation of this particular procedural rule would have caused her any prejudice. She was represented by counsel throughout the proceedings, and she has made no showing as to how she would have conducted herself differently had she been advised in the manner that she claims was required. Indeed, she has *exercised* many of the rights of which she was not advised by the IJ. *See, e.g.*, *Mema v. Gonzales*, 474 F.3d 412, 421 (7th Cir. 2007) (rejecting a due process failure-to-inform claim for failure to demonstrate prejudice where the alien was represented and did not assert a lack of actual knowledge of the right); *Bejko v. Gonzales*, 468 F.3d 482, 487-88 (7th Cir. 2006) (same); *Feto v. Gonzales*, 433 F.3d 907, 912-13 (7th Cir. 2006) (concluding that the IJ's failure to inform the alien of the rights in 8 C.F.R. § 1240.10 was harmless error under the circumstances).

---

[11] (...continued)
government . . . ;

(5) Place the respondent under oath;

(6) Read the factual allegations and the charges in the notice to appear to the respondent and explain them in non-technical language; and

(7) Enter the notice to appear as an exhibit in the Record of Proceeding.

**Conclusion**

Ms. Alimi has not made a substantial argument that she was denied a constitutional right to due process in her removal proceeding, nor has she demonstrated that the proceeding failed to comply with the applicable statutory standards. Moreover, given her admissions before the IJ, we cannot say, in any event, that she suffered any prejudice from the due process matters that she has asked that we review. Although she was not advised fully of her rights in her removal proceeding, as provided in the regulations, she also has failed to demonstrate that this procedural error caused any prejudice under the circumstances. Accordingly, we must deny the petition and affirm the decision of the Board.

PETITION DENIED

DECISION AFFIRMED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—6-6-07