# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-3440

RAUL BARRADAS,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR.,* Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of
the Board of Immigration Appeals.
No. A078-869-280

ARGUED APRIL 1, 2009—DECIDED SEPTEMBER 23, 2009

Before POSNER, EVANS, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Raul Barradas, a Mexican citizen
and lawful permanent resident of the United States, was
found removable from the United States on the grounds

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Eric H. Holder, Jr., is automatically substituted
for Michael B. Mukasey as Respondent.

that he knowingly attempted to smuggle illegal aliens into the country. He appealed the decision of the Immigration Judge ("IJ") to the Board of Immigration Appeals, which affirmed. Barradas now petitions this court for relief, arguing that the IJ incorrectly concluded that the government met its heavy burden of proof, improperly admitted evidence without allowing him the opportunity to cross-examine its preparer, and impermissibly denied him due process by compelling him to testify and then excessively interrogating him. For the reasons stated below, we deny the petition for review.

## I. Background

Raul Barradas, a Mexican citizen, became a lawful permanent resident of the United States on September 18, 2001. Barradas made his home in Monroe, Wisconsin, but made frequent trips back to Mexico. Before one of Barradas's trips in 2005, a family friend, Alfredo Meyer, gave him two United States birth certificates bearing the names "Nicole Lynne Leighty" and "Jacob Brian Leighty" and asked him to bring the children they named, allegedly Meyer's own, back to Wisconsin from Mexico. Barradas traveled to Mexico with his wife and his own two children to visit his brother. While there, he somehow acquired two Mexican children, Anyyensy Meyer Gonzalez, age seventeen, and Eduardo Doranetes Ortiz, age eleven. (The record is unclear at best regarding how Anyyensy and Eduardo came to travel with Barradas; Barradas's testimony indicates that unnamed people brought the children to him at some point during his visit.)

When Barradas tried to reenter the United States at the Hidalgo, Texas port of entry on October 8, 2005 with his wife, his two children, and Anyyensy and Eduardo in tow, he was stopped by Customs and Border Patrol agents Roel DeLaFuente and Mark Latigo. Barradas presented his resident alien card and the Leighty birth certificates to the agents, who became suspicious and ordered secondary inspections (in-depth interviews) of everyone in Barradas's van. Officer DeLaFuente recorded the information gleaned from the secondary inspections on a Form I-213 Record of Deportable/Inadmissible Alien and authored an accompanying Form I-831 Customs and Border Patrol memorandum.

According to those reports, Barradas told the agents that he knew Anyyensy was born in Mexico and that he had coached both children to memorize the information on the Leighty birth certificates. He claimed he was transporting the children to their father in Wisconsin and would receive $1000 per child for bringing them back. Anyyensy and Eduardo told the agents their real names and essentially reiterated the story Barradas had told the agents: that he gave them U.S. birth certificates and coached them to say that they were U.S. citizens named Nicole Lynne Leighty and Jacob Brian Leighty.

Following the secondary inspections, Anyyensy and Eduardo were returned to Mexico, Barradas's wife and children were permitted to return to the United States, and Barradas was detained at La Villa Detention Center and charged with violating 8 U.S.C. § 1325(a)(3) and 18 U.S.C. § 2.

On October 10, 2005, mere days after his apprehension in Hidalgo and the same day on which his charging document was completed,[1] Barradas pleaded guilty to alien smuggling. Because no detention space was available at the Port Isabel Service Processing Center, Barradas was paroled into the United States on October 11, 2005. On October 18, 2005, Officer DeLaFuente supplemented the Forms I-213 and I-831 with information about Barradas's conviction.

On October 19, 2005, Officer DeLaFuente initiated removal proceedings against Barradas and issued him a Notice to Appear ("NTA").[2] The NTA alleged that Barradas (1) was not a U.S. citizen or national; (2) was a native and citizen of Mexico; (3) applied for admission to the United States at Hidalgo as a returning lawful permanent resident; and (4) was convicted of smuggling illegal aliens into the United States on October 10, 2005. On the basis of those allegations, Barradas was charged as subject to removal from the United States pursuant to 8 U.S.C. § 1182(a)(6)(E)(i), which denies admissibility to aliens "who at any time knowingly ha[ve] encouraged,

---

[1] The Southern District of Texas, in which Hidalgo is located, has a "fast track" program to speed adjudication of cases involving the transportation, harboring, or smuggling of aliens. Memorandum from Craig Morford, Acting Deputy Attorney General, to United States Attorneys 2-3 (Feb. 1, 2008), *available at* http://www.fd.org/pdf_lib/fast_track_reauthorization08.pdf.

[2] The record indicates that the October 19, 2005 NTA superseded one issued to Barradas sometime proximate to the October 8, 2005 secondary inspection.

induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law . . . ."[3]

At his January 26, 2007 hearing before an IJ, at which he was represented by counsel, Barradas admitted the first three allegations of the NTA but denied the conviction and consequently his removability. The Department of Homeland Security ("DHS" or "the government") offered the NTA, documentation of Barradas's permanent resident status, and a copy of the October 8, 2005 criminal complaint into evidence without objection from Barradas. Barradas objected to the DHS's other proffered pieces of evidence, Officer DeLaFuente's Form I-213 and accompanying Form I-831 memorandum, on the grounds that he lacked an opportunity to cross-examine Officer DeLaFuente, their creator. The IJ admitted both pieces of evidence over Barradas's objections. The government did not offer into evidence any official court record of Barradas's conviction for alien smuggling.

The IJ invited the DHS to question Barradas about the fourth allegation in the NTA (alleging an October 10, 2005 conviction for alien smuggling). Barradas objected to the questioning, claiming that the DHS could not "meet [its] burden by questioning him in this hearing." The IJ

---

[3] The term "removable" is defined as an alien who is "inadmissible" under 8 U.S.C. § 1182 or "deportable" under 8 U.S.C. § 1227. 8 U.S.C. § 1229a(e)(2); *see also Zamora-Mallari v. Mukasey*, 514 F.3d 679, 687 n.2 (7th Cir. 2008). We use the terms interchangeably.

stated that Barradas had "no right to stand mute at this particular time," and informed Barradas that he would "draw an adverse inference" from Barradas's silence or refusal to take the stand. Barradas then took the stand and testified that on October 8, 2005, he applied for admission at the Hidalgo port of entry, along with his wife, his two daughters, and two children identified by birth certificates as Nicole Lynne Leighty and Jacob Brian Leighty. He claimed that he believed that the children were U.S. citizens and that he had been asked by their father, Alfredo Meyer, to return them to Wisconsin. When pressed by the DHS and the IJ, he said he thought the children were "eight, nine, or ten," and testified that he did not know why he had agreed to pick them up. He denied the Form I-213's allegations that he coached the children to memorize the Leighty birth certificate information, that he knew that they were not U.S. citizens, and that he was promised $1000 upon their safe return to Wisconsin.

The IJ interrupted the DHS's questioning to clarify Barradas's testimony about how the children came to be with Barradas and how he acquired the Leighty birth certificates. The IJ also asked Barradas to explain what happened following the border inspections. During the IJ's questioning, Barradas denied familiarity with the criminal complaint arising from the October 8, 2005 Hidalgo apprehension, but stated that he pleaded guilty to a charge in federal court around that time because he had "no choice" but to do so. The IJ confirmed that Barradas knew he had been charged with alien smuggling and that he had pleaded guilty to that charge.

After the government and the IJ questioned Barradas, Barradas's attorney did not examine him further.

The IJ immediately issued an oral decision in which he rejected Barradas's testimony that he did not know the children were not U.S. citizens as incredible and relied instead upon the information contained in the Form I-213 completed by Officer DeLaFuente. The IJ noted that the record did not contain a court record of Barradas's conviction, but found, based on Barradas's credible testimony about his guilty plea and the other evidence in the record, that Barradas engaged in alien smuggling and "knew or should have known" that the children he attempted to bring into the United States were not citizens. The IJ concluded that the DHS had established removability under 8 U.S.C. § 1182(a)(6)(E)(i) by clear and convincing evidence and ordered Barradas removed to Mexico.

Barradas timely appealed the IJ's order to the Board of Immigration Appeals ("BIA"). On August 27, 2008, the BIA affirmed the IJ's removal decision, finding that it was supported by evidence of record that established Barradas's knowing encouragement, inducement, assistance, abetting, or aiding of two undocumented minor aliens to try to enter the United States. In a footnote to its per curiam order, the BIA noted that 8 U.S.C. § 1182(a)(6)(E)(i) requires an individual to act "knowingly" and observed that the IJ misstated the mens rea requirement as "knew, or should have known." The BIA found this error to be harmless in light of Barradas's testimony that he pleaded guilty to alien smuggling. The

BIA found no evidence in the record to support Barradas's allegations that the IJ violated his due process rights.

Barradas now petitions this court for relief and renews the arguments he made before the BIA. His arguments logically condense into two primary allegations: insufficient evidence and violation of due process rights. First, he alleges that the DHS failed to prove his removability by "clear, unequivocal, and convincing evidence" as required by *Woodby v. INS*, 385 U.S. 276, 286 (1966). He contends that the DHS did not introduce sufficient evidence of his conviction to prove the factual allegation of the conviction asserted in his NTA. This contention is entwined with one of his subsidiary arguments: that the IJ improperly admitted and relied upon the Forms I-213 and I-831. Second, Barradas alleges that the IJ violated his due process rights by compelling his testimony through inappropriate threats to draw an adverse inference from his silence and then by subjecting him to "excessive interrogation" once he took the stand. We evaluate his claims in turn.

## II. Analysis

### A. Sufficiency of the Evidence

Barradas argues that the BIA's decision to remove him should be reversed because the DHS failed to prove by clear, unequivocal, and convincing evidence that he was convicted of alien smuggling. The NTA alleged that "[o]n October 10, 2005, [Barradas was] convicted of smuggling

illegal aliens into the United States." On the basis of that allegation and the three others to which Barradas admitted, the NTA alleged him to be inadmissible (and thus removable) pursuant to 8 U.S.C. § 1182(a)(6)(E)(i), which states that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." Although 8 U.S.C. § 1182(a)(6)(E)(i) does not require a conviction for inadmissibility or removal, *see In re Ruiz-Romero*, 22 I. & N. Dec. 486, 490 (B.I.A. 1999) ("[T]hese substantive provisions describe the smuggling activities that will suffice, even in the absence of a criminal conviction, to exclude or deport an alien from the United States."), Barradas asserts that the DHS must prove the conviction here because it was specifically alleged in the NTA. *See Woodby*, 385 U.S. at 286 ("[N]o deportation order may be entered unless it is found by clear, unequivocal, and convincing evidence that the facts alleged as grounds for deportation are true."); *Iysheh v. Gonzales*, 437 F.3d 613, 615 (7th Cir. 2006).[4]

---

[4] We question Barradas's basic premise that the government was required to prove that he was "convicted" of alien smuggling merely because it happened to use that term in its NTA allegation. The government could have employed any of a host of terms—encouraged, induced, assisted, abetted, aided, helped, succored, etc.—to allege, equally validly, that Barradas violated the statute under which he was charged removable, 8 U.S.C. § 1182(a)(6)(E)(i). To be found removable under the

(continued...)

Because Barradas has lawful permanent resident status, the government may remove him only if it establishes by clear and convincing evidence that he is removable. 8 U.S.C. § 1229a(c)(3)(A); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004). Where, as here, the IJ and BIA found that the government has met that burden, it is our task to consider whether the removal order rests on "reasonable, substantial, and probative evidence." *Olowo*, 368 F.3d at 699. We cannot reverse the order of the BIA unless we find that the evidence compels the conclusion that the BIA ruled incorrectly. *Rosendo-Ramirez v. INS*, 32 F.3d

---

[4] (...continued)

statute, Barradas need only have engaged in the conduct of alien smuggling; no conviction is statutorily required. *See* 8 U.S.C. § 1182(a)(6)(E)(i); *Escobar v. Holder*, 567 F.3d 466, 468-69 & n.1 (9th Cir. 2009); *In re Ruiz-Romero*, 22 I. & N. Dec. at 490. Barradas's insistence that the government be confined by the precise wording of the NTA elevates technical form over pragmatic substance and subverts the generally high degree of flexibility the DHS is afforded in making admissibility decisions. After all, the language of an NTA is not formally binding like that of a federal grand jury indictment; an NTA can be modified "[a]t any time during deportation or removal hearings." 8 C.F.R. § 1003.30. Moreover, support for Barradas's premise within the broader context of immigration jurisprudence appears to stem largely from factually distinguishable decisions. We save the resolution of this issue for another case, however. Today, *arguendo*, we accept as valid Barradas's assertion that the government is bound to prove with precision the "conviction" it alleged in his NTA and evaluate his petition for review on that basis.

1085, 1087 (7th Cir. 1994). Where, as here, the BIA has adopted, affirmed, and supplemented a decision of an IJ, we review the IJ's decision as supplemented by that of the BIA. *Alimi v. Gonzales*, 489 F.3d 829, 834 (7th Cir. 2007).

Our determination of whether there is reasonable, substantial, and probative evidence in the record as a whole to support the IJ's and BIA's conclusions that the government proved Barradas's conviction by clear, unequivocal, and convincing evidence necessarily requires an examination of the evidence admitted at Barradas's removal hearing. For reasons unbeknownst to us, and apparently even to itself, the government was unable to produce any court-issued documentation of Barradas's guilty plea or conviction at the time of his hearing.[5] Left without this evidence in the record, we must determine whether the evidence that the government did introduce—the criminal complaint, the Form I-213, and the Form I-831—was sufficient to satisfy the government's heavy burden of proof as to his conviction. First we must determine whether these items were

---

[5] At Barradas's continued hearing on October 5, 2006, the DHS said it would "reach out to try to find out if [it could] get a copy" of Barradas's conviction. The IJ told the DHS that "if you need some time [to get the conviction], you can just ask for some more time." The government evidently failed to do so. As of oral argument, the government still had not introduced a copy of the conviction or guilty plea or explained its failure to do so. Counsel at oral argument was unable to explain the delay in procuring a document she was able to find "on PACER in about thirty seconds."

admissible to prove the conviction. From there, we will evaluate their sufficiency.

There is a statutory list of records that constitute proof of a criminal conviction. *See* 8 U.S.C. § 1229a(c)(3)(B). Barradas correctly observes that neither a criminal complaint nor Forms I-213 or I-831 appears on the list. In light of the deference we accord agency regulations, however, we have held that the list is not exhaustive. *See Rosales-Pineda v. Gonzales*, 452 F.3d 627, 631 (7th Cir. 2006); *see also Francis v. Gonzales*, 442 F.3d 131, 142 (2d Cir. 2006). Here, we defer to the Attorney General's regulation for determining what kinds of evidence may be used to prove a criminal conviction in immigration proceedings, 8 C.F.R. § 1003.41. Subsection (d) of this regulation provides that "[a]ny . . . evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof." 8 C.F.R. § 1003.41(d). The Federal Rules of Evidence do not apply in immigration proceedings. *Doumbia v. Gonzales*, 472 F.3d 957, 962 (7th Cir. 2007). Evidence is admissible so long as it is probative and its admission is fundamentally fair. *Rosendo-Ramirez*, 32 F.3d at 1088.

The IJ admitted into evidence the criminal complaint charging Barradas with alien smuggling. Barradas did not object to the admission. During questioning, the IJ showed the criminal complaint to Barradas, who acknowledged that it charged him with alien smuggling. While a criminal complaint does not demonstrate guilt or the existence of a conviction, it at least provides some basis for the government's allegations in the NTA.

Barradas did not challenge the admission of or reliance upon this document, and neither do we.

The admissibility of the Forms I-213 and I-831—both as proof of Barradas's conviction and as proof of other facts in the case—is more contentious.[6] Barradas objected to their admission at his hearing because he was not given the opportunity to cross-examine their creator, Officer DeLaFuente, who was not present at the hearing. The IJ admitted both Forms over Barradas's objection. Barradas maintains that doing so was "fundamentally unfair" to him.

We have observed that "problems of fundamental fairness associated with hearsay testimony are dispelled when the testimony is subject to cross-examination," *Olowo*, 368 F.3d at 700, but we did not go so far as to say that cross-examination is the *only* way to ensure fundamental fairness. In the immigration context, "'fundamentally fair' should simply be read to mean 'in accordance with the reasonable opportunity guaranteed by [8 U.S.C.] § 1229a(b)(4).'" *Doumbia*, 472 F.3d at 962. Aliens in removal proceedings have the right to a reasonable opportunity to "cross-examine witnesses presented by the Government," 8 U.S.C. § 1229a(b)(4)(B), but when the evidence introduced is that "recorded by a[] [DHS] agent in a public record," the absent agent "cannot be presumed

---

[6] The relevant contents of the Forms I-213 and I-831 are virtually identical in this case. We will therefore follow the lead of Barradas's reply brief and limit our discussion to the admissibility of the Form I-213.

to be an unfriendly witness or other than an accurate recorder," *Espinoza v. INS*, 45 F.3d 308, 311 (9th Cir. 1994). "Establishing an automatic right to cross-examine the preparers of such documents would place an unwarranted burden on the [DHS]." *Id.* Absent any indication that a Form I-213 contains information that is manifestly incorrect or was obtained by duress, the BIA has found the Form to be inherently trustworthy and admissible as evidence. *In re Ponce-Hernandez*, 22 I. & N. Dec. 784, 785 (B.I.A. 1999). We have agreed with that position. *See Guerrero-Perez v. INS*, 242 F.3d 727, 729 n.2 (7th Cir. 2001).

Moreover, we have long allowed the admission of Forms I-213 to prove the truth of their contents. *See Rosendo-Ramirez*, 32 F.3d at 1089. There is no indication that Officer DeLaFuente's conviction notation was carelessly or maliciously drafted or was intended to serve as anything other than an administrative record.[7] We

---

[7] The notation in its entirety read: "10/18/05: Subject was reserved [sic] with an NTA (form 862) via mail. Subject was convicted of Alien Smuggling on 10/10/05. Subject was issued a McNary Parole and was admitted into the US at the Hidalgo Port of Entry due to that lack of space at PISPC on October 11, 2005." The notation Officer DeLaFuente made on the Form I-831 was substantially identical. The slight inconsistency between the date on the notation (10/18/05) and the date on the NTA (10/19/05) does not give rise to an inference of carelessness or unreliability. Likewise, the fact that DeLaFuente was a law enforcement officer and was acting in that capacity does not render the Form I-213 inadmissible. *Cf.*

(continued...)

might doubt the reliability of the notation—and require an opportunity for cross-examination—if it mischaracterized or misstated any material information about Barradas's conviction or seemed suspicious in any other way. No such factors are present here. Nor does Barradas allege that the remainder of the Form I-213 was carelessly drafted or clouded by bias. He does not claim that the conviction information noted on it is incorrect, nor that Officer DeLaFuente obtained any of the Form I-213's contents by duress or other inappropriate interrogation tactics. Perhaps most tellingly, Barradas does not assert that Officer DeLaFuente mischaracterized or incorrectly recorded the statements of Anyyensy and Eduardo. He merely attempts to cast doubt on the children's credibility, speculating that "they got nervous, or they were afraid . . . and they didn't have nothing else to say." In light of these facts, we find that the Form I-213 was properly admitted for its truth, both generally and with respect to the conviction notation.

Having concluded that the government's evidence to prove Barradas's conviction was properly admitted, we turn to the question of whether it was sufficient to support the IJ's finding that the government met its "clear, unequivocal, and convincing" burden. With respect to an alien, a "conviction" is defined as

---

[7] (...continued)
*Francis v. Gonzales*, 442 F.3d 131, 142 (2d Cir. 2006) (finding a police report prepared by Jamaican police admissible as proof of a conviction in immigration proceedings).

a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been with-held, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo conten-dere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punish-ment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48). Barradas admitted part (i) during a colloquy with the IJ at his hearing:

IJ: [L]et me show you Exhibit 3, this is the, this is a complaint. Does that look familiar? Does that look familiar?

Barradas: No, they did not give me anything.

IJ: Well, it's charged you with alien smuggling. You know that, right?

Barradas: Yes.

IJ: It's your understanding because you had no choice, if I understand correctly, you entered a plea of guilty. Is that right?

Barradas: Yes.

The IJ found Barradas's statements to be credible. We uphold an IJ's credibility finding as long as it is sup-ported by specific, cogent reasons and evidence in the record, *Torres v. Mukasey*, 551 F.3d 616, 626 (7th Cir. 2008), and we see no reason not to do so here. Moreover, the

administrative record of Barradas's conviction in the Form I-213 constitutes reasonable, substantial, and probative evidence that Barradas was adjudicated guilty.

The second prong of the definition is more difficult to establish without a formal judgment in the record. Barradas testified that he went to federal court, that his case was resolved, and that the government gave him "a lesser sentence . . . which it was not that big or grave." He also stated "[t]hey did not have me pay a fine and that they would not send be [sic] back to Mexico," but later merely stated that he "was not going to pay a fine." It is not clear precisely what Barradas's sentence or possible fine was; his testimony alone fails to clearly, unequivocally, and convincingly satisfy part (ii). However, when we consider the Form I-213 as well, we are convinced that the record as a whole supports the conclusion that "some form of punishment, fine, or restraint on [Barradas's] liberty" was imposed.

Officer DeLaFuente's addendum to the Form I-213 indicates that Barradas was paroled into the United States on October 11, 2005, because there was inadequate detention space at the Port Isabel Service Processing Center ("PISPC"). Although Barradas was readmitted to the United States, the alternative outcome—detention at the PISPC—would have been a sufficient restraint on his liberty. Between Barradas's testimony[8] about his "lesser sentence" and the Form I-213's indication that he was

---

[8] Our conclusion that Barradas's testimony was not improperly compelled, *see infra* Part II.B.1, permits us to consider Barradas's testimony in our analysis here.

initially ordered detained at the PISPC, we are satisfied that the record as a whole contains sufficient reasonable, substantial, and probative evidence from which the IJ and BIA could conclude that the government met its burden.[9]

## B. Due Process Violations

Barradas alleges two due process violations. First, he asserts that the IJ violated his due process rights when he told Barradas that he would take an "adverse inference" if Barradas chose to "stand mute" at the hearing; Barradas claims he was "compelled" to testify "in the absence of any evidence showing he was convicted of alien smuggling." Second, Barradas contends that once he took the stand to testify, the IJ interrogated him ex-

---

[9] Even if we were to find the evidence insufficient, as Barradas urges us to, on remand the government would simply have to produce the record of his conviction it now claims to have found on PACER to unambiguously satisfy its burden. We note that "it is pointless to remand if 'it is clear what the agency decision must be.'" *Yang v. INS*, 109 F.3d 1185, 1194 (7th Cir. 1997) (quoting *Rosendo-Ramirez*, 32 F.3d at 1094). Similarly, we agree with the BIA's characterization of the IJ's unfortunate misstatement of the mens rea requirement ("knew, or should have known" instead of the correct "knowingly") for Barradas's removal as harmless error in light of the other evidence demonstrating the existence of an adequate mens rea. *See Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir. 1991) ("Whether the IJ used the incorrect legal standard is irrelevant. We review the decision of the BIA, not the IJ.").

cessively and went so far as to "assume the role of counsel for the Government."

We review Barradas's claims that he was denied due process of law de novo. *Alimi*, 489 F.3d at 834. "In cases claiming due process violations in immigration proceedings, . . . proceedings which meet the statutory and regulatory standards governing the conduct of removal hearings, as a general rule, comport with due process." *Id.* (citing *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 884-85 (7th Cir. 2007)).

### 1. Compelled Testimony

At the beginning of his hearing, Barradas admitted NTA allegations (1)-(3) and denied allegation (4). The IJ then admitted evidence, including the Form I-213 and criminal complaint, and asked the government if it wanted to examine Barradas. Barradas objected to all questioning. His counsel explained, "I think it's the Government's burden. I don't think [it] can meet [its] burden by questioning him in this hearing." The government countered that if Barradas declined to testify, it would ask the IJ to take the reports it had submitted into full consideration. The IJ then stated that "the respondent has no right to stand mute at this particular time. If he does, I will draw an adverse inference from that. . . . It's not improper to have him examined. . . ." Barradas then took the stand, the IJ administered the oath to him through an interpreter, and the government began asking questions. At no further point did Barradas attempt to remain silent or otherwise make an effort to avoid answer-

ing questions related to alien smuggling; his counsel only objected to the government's questions about unrelated domestic violence incidents.

Barradas does not dispute that the IJ is permitted to draw adverse inferences from silence in civil immigration proceedings. Indeed, both parties agree that under BIA precedent, a respondent in an immigration proceeding confronted with evidence of his deportability leaves himself open to adverse inferences from his silence. *In re Guevara*, 20 I. & N. Dec. 238, 241-42 (B.I.A. 1991). Barradas also recognizes that the BIA views this principle as one of burden-shifting: if the government establishes a prima facie case for removability, then the burden shifts to the respondent. *See In re Vivas*, 16 I. & N. Dec. 68, 69 (B.I.A. 1977) ("[N]otwithstanding the requirement of clear, convincing and unequivocal evidence to establish deportability, a respondent may properly be required to go forward with evidence to rebut prima facie showings by the [DHS].").

Barradas's only contention here is that the government never made its requisite prima facie showing. He claims that the IJ's threat to make an adverse inference was an improper infringement of due process in his case because the government did not meet its initial burden of removability before the IJ made the statement. Specifically, he argues that the government did not satisfactorily prove the existence of his conviction for alien smuggling.

Our question then is whether the government's evidence, *before* Barradas testified, established his con-

viction—and consequent removability—clearly, convincingly, and unequivocally. If it did, then the IJ would have been permitted to draw an adverse inference from Barradas's silence and Barradas's due process argument on this point must fail. If the government did not make a prima facie showing, then the IJ's statement may be viewed as impermissibly compelling Barradas to testify.

Here, we find that the government adequately satisfied its burden to demonstrate Barradas's removability before the IJ made his "adverse inference" statement. Although Barradas's testimony corroborated and clarified the information contained in the documentary evidence, it was not a required complement to the government's prima facie case. *See Cabral-Avila v. INS*, 589 F.2d 957, 959 (9th Cir. 1978) ("The immigration judge correctly decided that the petitioners were required to rebut the finding of deportability due to the admission of the I-213 forms. Once the forms have been properly admitted, the [government's] prima face case of deportability is made."). We cannot reverse the order of the BIA unless we find that the evidence compels the conclusion that the BIA ruled incorrectly, *Rosendo-Ramirez*, 32 F.3d at 1087, and the evidence in this case simply does not compel such a conclusion.

## 2. Excessive Interrogation

Barradas's final argument is that the IJ violated his due process rights by going "well beyond his role as fact-finder" to become "the de facto co-counsel for DHS."

Barradas asserts that the IJ's excessive questioning and continued interruption of his testimony denied him the fair hearing to which he was entitled.

Immigration judges have the power to "interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). They are permitted to use their statutory authority to "focus the proceedings and exclude irrelevant evidence," though they may not "bar[ ] complete chunks of oral testimony that would support the applicant's claim." *Kerciku v. INS*, 314 F.3d 913, 918 (7th Cir. 2003) (per curiam). Essentially, IJs' "'broad discretion to control the manner of interrogation in order to ascertain the truth,'" *Apouviepseakoda*, 475 F.3d at 885 (quoting *Iliev v. INS*, 127 F.3d 638, 643 (7th Cir. 1997)), is bounded only by the due process requirement that an alien be afforded a meaningful opportunity to be heard, *see Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005). "In the end, we must determine whether, given the totality of the circumstances, [Barradas] had a full and fair opportunity to put on [his] case." *Id.*

The circumstances here indicate that Barradas had a full and fair opportunity to present his case. The IJ considered Barradas's evidentiary objections before ruling on them. He interjected his own questions into the hearing "just for . . . clarification on a line of testimony" Barradas gave, namely about the birth certificates and how Anyyensy and Eduardo came to travel with Barradas, and only asked Barradas an extended series of questions after the government concluded its examination of him. The IJ did not interrupt Barradas to

ask irrelevant or inappropriate questions, *see Castilho de Oliveira v. Holder*, 564 F.3d 892, 899-900 (7th Cir. 2009), nor did the IJ's questioning rise to the level of being "so pervasive that it was often difficult to determine who was representing the federal government with more fervor—the IJ or the government's attorney," *Torres*, 551 F.3d at 627. Further, the IJ did not bar any evidence that Barradas sought to introduce. To the contrary, Barradas's counsel declined to examine him or present any witnesses on his behalf.

Barradas also contends that the IJ's failure to demand production of "the supposed conviction for alien smuggling" also supports his claim of a due process violation. We fail to see how that contention can be reconciled with Barradas's simultaneous allegations that the IJ inappropriately acted on behalf of the government. If the IJ instructed the government as to what evidence to produce and in what form to produce it, as Barradas maintains he should have, that would be more akin to becoming "de facto co-counsel" than any other instance of the IJ's conduct to which Barradas objects.

### III. Conclusion

The IJ's and the BIA's determinations that the government proved Barradas's conviction by clear, convincing, and unequivocal evidence were supported by reasonable, substantial, and probative record evidence. Likewise, we find substantial support for the BIA's findings that Barradas was afforded a full and fair oppor-

tunity to present his case before a neutral IJ. Accordingly, Barradas's petition for review is DENIED.