# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1370

_____

| | | |
|---|---|---|
| Paul Kipkemei Kirong, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review from the |
| | * | Board of Immigration Appeals. |
| Michael B. Mukasey, Attorney | * | |
| General of the United States of | * | |
| America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: January 17, 2008
Filed: June 20, 2008 (Corrected: 06/23/2008)

_____

Before BYE, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Paul Kipkemei Kirong, a native of Kenya, petitions for review of the decision of the Board of Immigration Appeals ("BIA") that he was ineligible for adjustment of status and its alternative decision denying his application for adjustment of status as a matter of discretion. He also petitions for review of the BIA's discretionary decision not to grant voluntary departure. For the reasons discussed below, we deny the petition.

## I.    BACKGROUND

Kirong came to the United States in 2001 on an F-1 student visa. On four occasions between 2001 and 2005, he marked the "citizen or national of the United States" box on Form I-9s to obtain private employment. Along with the Form I-9s, he presented an altered social security card to potential employers. His social security card originally contained the restriction that the card was "valid for work only with INS [Immigration and Naturalization Service] authorization." He removed this language before using the card to obtain employment without INS authorization. In 2005, Kirong was convicted of burglary and child endangerment, following an incident where he threatened his girlfriend and their child with a knife. He married his girlfriend while in state custody, but they have never lived together at any point. In 2006, Kirong admitted that he was removable because he failed to maintain the conditions of his nonimmigrant status when he was employed for wages without authorization of the Department of Homeland Security ("DHS").[1] *See* 8 U.S.C. § 1227(a)(1)(C)(i). However, Kirong sought to adjust his status based on his marriage to a United States citizen. *See* 8 U.S.C. § 1255(a), (e)(3).

At a hearing before the immigration judge ("IJ"), Kirong argued that he was admissible and eligible for adjustment of status based on his testimony that he did not mark the "citizen or national of the United States" box on the Form I-9s to falsely represent himself as a citizen of the United States. *See* 8 U.S.C. § 1182(a)(6)(C)(ii). Instead, Kirong testified that he simply wanted employment. Kirong also testified that he had been drinking alcohol on the night of the knife incident, and his wife testified that she felt pressured by other people involved in the incident to exaggerate her version of the events to the police.

---

[1]The INS ceased to exist on March 1, 2003, and its functions were transferred to the DHS. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002).

After hearing the testimony and reviewing the evidence, the IJ determined that Kirong was removable because he falsely represented himself as a United States citizen when he marked on Form I-9s that he was a "citizen or national of the United States." *See* 8 U.S.C. § 1227(a)(3)(D). The IJ then held that Kirong was ineligible for adjustment of status because he was inadmissible based on his false claim of United States citizenship. *See* 8 U.S.C. §§ 1255(a), 1182(a)(6)(C)(ii)(I). The IJ also held that, even if Kirong were eligible for adjustment of status, she would deny the application as a matter of discretion. *See* 8 U.S.C. § 1255(a). She based this discretionary decision on the facts that Kirong never lived with his wife before or after the marriage, that he was convicted of child endangerment after threatening his wife and child with a knife, and that he marked the "citizen or national of the United States" box on Form I-9s and used an altered social security card to obtain employment. Finally, the IJ denied Kirong voluntary departure because his lack of good moral character based on his conviction caused him to be ineligible for voluntary departure. *See* 8 U.S.C. § 1229c(b)(1)(B).

Kirong appealed the IJ's decision to the BIA. The BIA first held that the IJ erred in concluding that Kirong was removable under 8 U.S.C. § 1227(a)(3)(D). It concluded that, in order for Kirong to be removable under 8 U.S.C. § 1227(a)(3)(D), the DHS had the burden of proving by clear and convincing evidence that Kirong falsely represented himself as a citizen, as opposed to a national, of the United States. The BIA found that the record did not contain sufficient evidence to support the IJ's finding that the DHS met this burden. The BIA, though, held that Kirong previously conceded his removability under 8 U.S.C. § 1227(a)(1)(C)(i), based on his failure to maintain the conditions of his nonimmigrant status. Therefore, he still had to prove that he was eligible for adjustment of status to remain in the United States. *See* 8 U.S.C. § 1255(a). The BIA held that Kirong did not satisfy his burden to prove clearly and beyond doubt that he was admissible and, therefore, eligible for adjustment of status. *See* 8 U.S.C. §§ 1182(a)(6)(C)(ii)(I), 1229a(c)(2)(A). It determined that Kirong could not meet his burden of establishing clearly and beyond

doubt that he had not made a false claim of citizenship based on the evidence that he marked the "citizen or national of the United States" box on the Form I-9s and signed them under penalty of perjury, altered his social security card, and testified that he was not claiming to be either a citizen or a national by filling out the Form I-9s before later claiming in a brief that he believed he was a national of the United States. Alternatively, the BIA affirmed the IJ's discretionary decision to deny Kirong's application for adjustment of status. The BIA then made the discretionary decision to deny voluntary departure.

## II.    DISCUSSION

Kirong petitions for review of several aspects of the BIA's decision and argues that: (1) the BIA held him to the incorrect burden of proof in determining whether he proved he was admissible under 8 U.S.C. § 1182(a)(6)(C)(ii); (2) he did not falsely represent himself as a citizen of the United States for a purpose or benefit under the Immigration and Nationality Act ("the Act"); (3) the BIA violated his right to due process by failing to consider the "positive equities" of his case in reaching its discretionary decision to deny adjustment of status; and (4) the BIA erred in its discretionary decision not to grant voluntary departure.

### A.    Adjustment of Status

The BIA found that Kirong was ineligible for adjustment of status before alternatively holding that, even if Kirong were eligible for adjustment of status, it would deny the application as a matter of discretion. In most circumstances, we simply would turn to the alternative, discretionary decision, *see Ling Yang v. Mukasey*, 514 F.3d 278, 280 n.2 (2d Cir. 2008) (per curiam), and hold that we lack jurisdiction to review the BIA's discretionary decision unless Kirong raised a constitutional claim or a question of law, *see Hailemichael v. Gonzales*, 454 F.3d 878, 886 (8th Cir. 2006) ("This Court lacks jurisdiction to review discretionary denials of

adjustment of status, unless the petition for review raises a constitutional claim or question of law."); 8 U.S.C. § 1252(a)(2)(B), (D). However, because the BIA's alternative finding that Kirong was inadmissible based on his failure to prove clearly and beyond doubt that he did not falsely represent himself as a citizen of the United States could result in a permanent bar to entry into the United States, *see* 8 U.S.C. § 1182(a)(6)(C)(ii)(I), we are required to review the BIA's determination that Kirong was inadmissible and, therefore, ineligible for adjustment of status. *See Nguyen v. Mukasey*, 522 F.3d 853, 855 (8th Cir. 2008) (per curiam) (holding that even though Nguyen conceded removability under 8 U.S.C. § 1227(a)(1)(D)(i), we were obliged to review the BIA's decision that Nguyen was also "removable for having committed marriage fraud and for having procured an immigration benefit by fraud or willful misrepresentation, because such findings could result in a permanent bar to entry into the United States").

"We review the Board's conclusions of law de novo, with substantial deference to its interpretations of statutes and regulations administered by the agency." *Rodriguez v. Mukasey*, 519 F.3d 773, 776 (8th Cir. 2008) (quotation omitted). "The Board's findings of fact will be disturbed only if unsupported by substantial evidence." *Id.* (quotation omitted). Under 8 U.S.C. § 1255(a), an alien who is removable may seek adjustment of status. An alien must be "admissible to the United States" to be eligible for adjustment of status. 8 U.S.C. § 1255(a). An alien is inadmissible if he or she "falsely represents, or has falsely represented, himself or herself to be a citizen of the United States for any purpose or benefit under this chapter (including section 1324a of this title) or any other Federal or State law." 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Kirong first argues that the BIA erred in requiring him to prove clearly and beyond doubt that he was admissible and that this error also violated his due process rights. He contends that, while "applicants for admission" to the United States bear the burden of proving clearly and beyond doubt that they are admissible, he is not an

applicant for admission because he was lawfully admitted to the United States in 2001. Instead of being required to prove clearly and beyond doubt that he is admissible, Kirong argues that he must only prove by a preponderance of the evidence that the apparent grounds for inadmissibility do not apply. We disagree. Kirong admitted he was removable under 8 U.S.C. § 1227(a)(1)(C)(i). Therefore, he is an applicant for admission because he is seeking to adjust his status to be admitted as a lawful permanent resident. *See Ruiz-Almanzar v. Ridge*, 485 F.3d 193, 197-98 (2d Cir. 2007) (explaining that an applicant for adjustment of status is in a similar position as an alien seeking entry into the United States and, "like [an alien] seeking entry, must show that [he is] eligible for admissibility under [8 U.S.C. § 1182]") (internal quotation omitted). With this "applicant for admission" classification, the BIA correctly determined that Kirong was required to prove clearly and beyond doubt that he was admissible and, therefore, eligible for adjustment of status. *See Rodriguez*, 519 F.3d at 776; *Kechkar v. Gonzales*, 500 F.3d 1080, 1085 (10th Cir. 2007); *Blanco v. Mukasey*, 518 F.3d 714, 720 (9th Cir. 2008). Thus, in this case, Kirong was required to prove clearly and beyond doubt that he did not make a false claim of United States citizenship for a purpose or benefit under the Act. *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I).

Kirong then argues that falsely claiming United States citizenship to obtain private employment by marking the "citizen or national of the United States" box on a Form I-9 is not for a purpose or benefit under the Act. *See* 8 U.S.C. §§ 1182(a)(6)(C)(ii)(I), 1324a. We have since decided this issue and held that "an alien who marks the 'citizen or national of the United States' box on a Form I-9 for the purpose of falsely representing himself as a citizen to secure employment with a private employer has falsely represented himself for a benefit or purpose under the Act." *Rodriguez*, 519 F.3d at 777. In light of this holding, Kirong's argument that his checking the "citizen or national of the United States" box on the Form I-9s was not for a purpose or benefit under the Act fails so long as he cannot prove clearly and beyond doubt that he did not represent himself as a United States citizen. *See id.* at 776 (noting that an alien is only inadmissible under 8 U.S.C. § 1182(a)(6)(C)(ii)(I)

-6-

"when he falsely represents himself as a *citizen* of the United States for any of the described purposes").

After reviewing the record, we find that substantial evidence supports the BIA's finding that Kirong did not clearly and beyond doubt prove that he was admissible. Kirong marked the "citizen or national of the United States" box on four Form I-9s to obtain employment with four different employers. Along with submitting the Form I-9s, Kirong showed potential employers an altered social security card, from which he had removed the language requiring INS approval for his employment. Kirong testified that he did not know what a national was and also that a citizen was a person born in the United States. He knew that he was not born in the United States and was not a United States citizen. He also testified that he intentionally marked the "citizen or national" box but that he did not mean to claim anything by that action. He only sought to obtain employment. Although it is conceivable that Kirong marked the "citizen or national of the United States" box on the Form I-9s to indicate he was a national, the evidence does not clearly and beyond doubt establish that Kirong did not falsely represent himself as a United States citizen when he marked the "citizen or national of the United States" box on the Form I-9s. As the BIA stated and as Kirong argued in his brief to this court, "the evidence in this case, at best, is equivocal as to whether his attestation involved a claim of citizenship or nationality." BIA Order at 3.[2] Therefore, substantial evidence supports the BIA's finding that Kirong did not satisfy his burden of proving clearly and beyond doubt that he did not falsely represent

---

[2]The equivocal nature of the evidence in this case is demonstrated further by the BIA's holding that the DHS did not carry its burden of proving by clear and convincing evidence that Kirong falsely represented himself as a United States citizen.

himself as a United States citizen and that he, therefore, did not prove he was admissible.[3]

Because substantial evidence supports the BIA's holding that Kirong did not satisfy his burden of proof, we agree with the BIA's determination that Kirong is inadmissible and, therefore, ineligible for adjustment of status. Therefore, we deny Kirong's petition for review with respect to his adjustment of status claim.[4]

---

[3]Kirong also argues that the BIA made a new and incorrect factual finding by stating that Kirong asserted "something" by marking the "citizen or national of the United States" box on the Form I-9s. We disagree with his characterization that this was a new and incorrect factual finding. Instead, the BIA agreed with the IJ's refusal to believe that Kirong only marked the box to obtain employment without claiming anything. Clearly, by marking the box on the four Form I-9s, Kirong was claiming either to be a citizen or a national of the United States.

Additionally, we reject Kirong's argument that the BIA made a new and incorrect factual finding when it characterized his argument in his brief to the BIA as including a new claim that he meant to indicate he was a national when he marked the "citizen or national" box. In his brief to the BIA, Kirong discussed the disjunctive nature of the "citizen or national of the United States" box on the Form I-9s and argued, "Isn't it more likely that Mr. Kirong, not really knowing what a national was, thought that it might then apply to him?" Br. of Pet'r to the BIA at 21. Kirong claims that he did not argue that he was, in fact, indicating he was a national by marking the box. He only argued that a person's decision to mark the "citizen or national" box on a Form I-9 does not automatically prove that he or she is claiming to be a citizen. We see no reason to view the BIA's interpretation of Kirong's argument as a new and erroneous factual finding.

[4]Because the BIA correctly held that Kirong was ineligible for adjustment of status, we need not reach the BIA's alternative, discretionary decision to deny adjustment of status or Kirong's due process claim challenging the discretionary decision.

## B. Voluntary Departure

We generally lack jurisdiction to review the BIA's decision denying voluntary departure. 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure . . . ."). However, we have jurisdiction over constitutional claims or questions of law relating to a voluntary departure determination. 8 U.S.C. § 1252(a)(2)(B)(i), (D). Kirong argues that the BIA legally erred by denying voluntary departure in its discretion sua sponte, instead of reviewing the IJ's determination that he was ineligible for voluntary departure.

The BIA "may review questions of law, discretion, and judgment and all other issues in appeals from the decisions of immigration judges de novo." 8 C.F.R. § 1003.1(d)(3)(ii). Based on the regulation's broad grant of authority to the BIA to review de novo "all . . . issues in appeals from the decisions of immigration judges," we see no reason to limit the BIA's authority to make a discretionary decision to deny voluntary departure after an IJ denies voluntary departure based on an applicant's ineligibility for it. Requiring the BIA to remand this case to the IJ so that the IJ can first make a discretionary determination "would be an imprudent expenditure of resources." *Solano-Chicas v. Gonzales*, 440 F.3d 1050, 1054 (8th Cir. 2006). Therefore, we reject Kirong's legal argument and deny his petition for review with respect to his voluntary departure claim.

## III. CONCLUSION

For the foregoing reasons, we deny Kirong's petition for review.

BYE, Circuit Judge, concurring.

A false claim of citizenship is a ground for the mandatory denial of an application for relief from removal. Despite the clear regulatory language imposing

a mere preponderance standard upon an alien who argues a ground for denial of relief should not apply to him, see 8 C.F.R. § 1240.8(d) ("If the evidence indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the alien shall have the burden of proving by a preponderance of the evidence that such grounds do not apply." ), we hold Paul Kipkemei Kirong had the higher burden of proving "clearly and beyond doubt" that he did not make a false claim of citizenship. I will not belabor the reasons why I disagree with this conclusion, because we are bound by Rodriguez v. Mukasey, 519 F.3d 773 (8th Cir. 2008), issued after this case was submitted to our panel. See Rodriguez, 519 F.3d at 776 ("Rodriguez bore the burden of proving clearly and beyond doubt that he was not inadmissible."). I concur in denying Kirong's petition for review because I agree he cannot show clearly and beyond doubt that he did not make a false claim of citizenship when he marked the "citizen or national of the United States" box on Form I-9.

I write separately for the purpose of urging the government to revise Form I-9. In Rodriguez, we noted "Form I-9 is poorly designed in that by checking one box the person ambiguously represents that he is either a citizen or a national." Id. at 776-77. The ambiguous nature of the "citizen or national" box on Form I-9 has spawned needless litigation in this circuit as well as others over whether an alien makes a false claim of citizenship by checking the box. See id.; see also Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004); Kechkar v. Gonzales, 500 F.3d 1080, 1085 (10th Cir. 2007); United States v. Karaouni, 379 F.3d 1139, 1143 (9th Cir. 2004). The doubt created by Form I-9's disjunctive choice between "citizen or national" is exacerbated by the fact that few people know what it means to be a "national" of the United States. Indeed, counsel for the government in this case could not advise our panel on the precise meaning of a "national" of the United States. As a result, some aliens may genuinely, but mistakenly, believe they are nationals of the United States when they complete Form I-9, only to be subsequently imposed with the onerous burden of proving clearly and beyond doubt that they were not making a false claim of citizenship.

-10-

The government offers no reason why the "citizen or national" inquiry on Form I-9 must be posed as a single disjunctive choice, rather than as two separate, stand-alone questions. Given the dire consequences which face an alien who falsely represents himself to be a citizen, see ante at 5 (noting such a claim can result in a permanent bar to entry into the United States), I suggest a simple revision in this widely-used form is more than overdue.

_____