# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3203, 11-2645, 12-1594

FIDEL MUNOZ-AVILA, also known as
FIDEL MUNOZ AVILA,

*Petitioner,*

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent.*

On Petitions for Review of an Order of
the Board of Immigration Appeals.
A078-848-496

SUBMITTED NOVEMBER 6, 2012—DECIDED MAY 3, 2013

Before ROVNER and HAMILTON, *Circuit Judges*, and
LEFKOW, *District Judge.**

ROVNER, *Circuit Judge.* Fidel Munoz Avila came to
the attention of the Department of Homeland Security
(DHS) when he filed an application for adjustment of

---

* The Honorable Joan Humphrey Lefkow, District Judge for
the Northern District of Illinois, is sitting by designation.

status based on his marriage to a United States citizen. Avila and his wife have been married since 1999, and have two young daughters. He has been employed laying granite countertops since approximately 1997. DHS concluded that Avila was ineligible for adjustment of status based on its determination that he attempted to enter the United States on February 19, 1997, by representing himself to be U.S. citizen, and that he had actually entered the United States at a later date without presenting himself for inspection.

DHS subsequently issued a Notice to Appear charging that Avila was removable on the following grounds: (1) as an alien present in the United States without inspection or admission, under 8 U.S.C. § 1182(a)(6)(A)(I); and (2) as an alien who falsely represented himself to be a citizen of the United States for an immigration benefit under 8 U.S.C. § 1182(a)(6)(C)(ii). Avila conceded that he was removable as an alien who is present without being admitted or paroled in that he had entered the United States without presenting himself to a border checkpoint. He contends, however, that he is not removable for the additional reason that he had made a false claim of U.S. citizenship.

That allegation stemmed from an earlier, unsuccessful attempt made by Avila to enter the United States. At that time, he presented himself to a checkpoint, but was detained and then allowed to withdraw his request for admission and return to Mexico in lieu of removal proceedings. The government contends that at that checkpoint, Avila made a false representation that he was a U.S. citizen, and Avila denies that assertion.

The issue is significant even though Avila has conceded removability as an alien present without being admitted or paroled. That provision renders him removable unless he demonstrates that he qualifies for and merits some form of relief or protections from removal. 8 U.S.C. § 1229a(c)(4)(A); 8 C.F.R. § 1240.8(d). Avila seeks relief from removal by adjusting his status based on his marriage to a U.S. citizen, but in order to establish eligibility for that relief, he must demonstrate that he is admissible. See 8 U.S.C. § 1255(a). A false claim of United States citizenship under 8 U.S.C. § 1182(a)(6)(C)(ii) is a grounds of inadmissibility. It has been characterized as the "immigrant version of the death penalty," because that ground of inadmissibility cannot be waived by the Attorney General and therefore operates as a permanent bar. *Sandoval v. Holder*, 641 F.3d 982, 984-85 (8th Cir. 2011); *Kirong v. Mukasey*, 529 F.3d 800, 803 (8th Cir. 2008). Accordingly, Avila will be prohibited from relief from removal and adjustment of status unless he carries his burden of demonstrating that he is not inadmissible for making a false claim of United States citizenship. See *id.* at 802.

After a hearing, the Immigration Judge (IJ) found him removable on both grounds and denied his applications for adjustment of status and for voluntary departure. The Board of Immigration Appeal (BIA) affirmed on appeal, with one of the Board members dissenting without opinion. Avila then appealed to this court, but at argument requested that we stay our ruling until his motions to reopen and for reconsideration before the BIA were decided. The BIA ultimately denied him the requested

relief in those motions, and he has appealed those determinations to this court. The matters are consolidated for purposes of this appeal.

Where, as here, the BIA adopts and supplements the IJ's decision, we review the IJ's decision as supplemented by that of the BIA. *Barradas v. Holder*, 582 F.3d 754, 762 (7th Cir. 2009). We will reverse only if the evidence compels the conclusion that the BIA ruled incorrectly. *Id.* We review *de novo* the BIA's conclusions of law. *Gutierrez-Berdin v. Holder*, 618 F.3d 647, 651 (7th Cir. 2010).

At the hearing before the IJ, the government presented no witness testimony, but relied on three documents to establish that Avila claimed to be a U.S. citizen. Two of the documents were government forms, Form I-213 and the Notice of Visa Cancellation/Border Crossing Card Voidance ("Notice of Visa Cancellation"), which were filled out by immigration officials at the time that Avila attempted to gain entry into the country. Form I-213 states that: "On the above date, the subject made application for entry into the United States, from Mexico at the San Ysidro, Port of Entry by presenting [a] Baptismal Certificate . . . given by friends . . . ." That content is essentially repeated in the Notice of Visa Cancellation, which declares "On 2-18-97, the aforementioned subject attempted to enter into the United States from Mexico, afoot, via the San Ysidro, Port of Entry presenting an entry document belonging to another. Subject was allowed to withdraw in lieu of exclusion proceedings and was returned to Mexico." The third document intro-

duced by the government is a baptismal certificate, which the government argues is the baptismal certificate presented by Avila to the immigration officials.

Avila testified at the hearing, and asserted that he did not present the baptismal certificate to the immigration officials, but rather that it fell out of his pocket when he approached them. He claims that he had found the certificate on a bench in Mexico, and was bringing it with him to the United States with the intent to forward it to the church of the baptism so that it could be returned to the owner. He asserted that such documents were routinely stolen by Mexican postal officials so that he did not trust mailing it from there, and that he knew that it was important to the owner because it is often needed for marriage.

The IJ did not find the testimony of Avila credible, and therefore concluded that Avila had presented the certificate to the officials. There is no indication from either the government or Avila of any other representation made by Avila at the entry point other than the handing of the certificate.

The BIA affirmed the IJ's determination, holding that it could not conclude that the adverse credibility determination was erroneous. The BIA further held that the IJ did not err in considering the documents introduced by the government. In footnote 1, the BIA stated:

> We emphasize that the Immigration Judge's decision and our decision in this matter do not make a legal conclusion that the respondent made a false claim to United States citizenship. Rather, these deci-

sions are based on the respondent's failure to carry his burden of proof with regard to his eligibility for adjustment of status, due to his failure to establish his admissibility.

BIA Order of August 24, 2010 at 2, n.1. The BIA, with one Board member dissenting, thus did not conclude that Avila had made a false claim of U.S. citizenship and was subject to removal on that basis, but denied relief on the uncontested ground of removal because it concluded that Avila had failed to prove that he was not inadmissible in that he failed to establish that he did not file a false claim of U.S. citizenship.

Avila filed motions to reopen and for reconsideration to the BIA. One argument raised was that the IJ indeed had held that Avila had made a false claim of citizenship, and that the BIA erred in stating that the IJ decision did not rest on that legal conclusion. In response, the BIA granted the motion for reconsideration for the purpose of merely deleting footnote 1, reasoning that the IJ had in fact found that the government met its burden of demonstrating that Avila was removable for making a false claim of U.S. citizenship and that the IJ's conclusion was supported in the record. The BIA provided no other explanation or reasoning, and the dissenting member declined Avila's request to set forth his reason for dissenting. Avila now appeals both the original decision and the decisions on his motions to reopen and for reconsideration.

Some of Avila's claims on appeal can be dismissed quickly. Avila contends that the IJ erred in considering

the baptismal certificate and the government documents, Forms I-213 and the Notice of Visa Cancellation. As we set forth in *Barradas*, "[w]e have long allowed the admission of Forms I-213 to prove the truth of their contents." 582 F.3d at 763. We held that absent any indication that the forms contain information that is manifestly incorrect or obtained by duress, the forms should be considered inherently trustworthy and admissible as evidence. *Id.; Gutierrez-Berdin*, 618 F.3d at 653. Avila has given us no reason to reconsider that determination, nor has he sought to distinguish the Notice of Visa Cancellation, which contains the same essential information as found on Form I-213. He does not argue that the forms contain incorrect information or information that was obtained by duress. Moreover, although he challenges the admission of the baptismal certificate, he does not contest that it was the certificate in his possession at the entry point. The IJ did not err in considering those documents.

Avila also asserts that the IJ erred in determining that his testimony was not credible. As credibility determinations are questions of fact, we examine the IJ's findings deferentially and uphold them if they are supported by substantial evidence. *Abraham v. Holder*, 647 F.3d 626, 632 (7th Cir. 2011); *Nigussie v. Ashcroft*, 383 F.3d 531, 534-35 (7th Cir. 2004). The IJ's credibility determination is well within that standard. The sequence of events described by Avila is implausible at best, and the IJ did not err in refusing to credit it.

Therefore, accepting the IJ's credibility determination, we assume that the government forms are correct in

documenting that Avila presented the baptismal certificate at the inspection point. The question then becomes whether that constitutes a representation that he is a U.S. citizen. There is no evidence from any source indicating that Avila made any oral statements at all, and in fact there is no indication that he even used the name of the person on the baptismal certificate. Even if the handing of the certificate constitutes an implicit representation that he is the person on the certificate, there is nothing in that certificate that constitutes a representation that he is a U.S. citizen. The baptismal certificate is a form that contains lines with the word "city" under them, seeking the place of birth and, at a later part of the form, requesting the location of the baptism. The certificate presented by the government states that Edgar Gabriel Martinez was born on March 15, 1978, and for the designation of the "city" of birth it lists "Harbor City." No state or country is set forth as to the place of birth. The certificate further declares that he was baptized nearly four months later, on July 2, 1978, and the "city" of baptism is "Wilmington, California." In contrast to the place of birth, then, the location of the baptism does indicate a state (and therefore a country.) The locale of a person's baptism, however, does not indicate citizenship, and therefore the Wilmington, California, reference does not constitute a representation of U.S. citizenship.

The caselaw is mixed as to whether a statement as to a person's place of birth can constitute a claim of citizenship. Our court and others have held in the criminal context that a statement that a person was born in

the United States is insufficient to establish that he falsely represented himself to be a U.S. citizen, because a person may be born in the United States and not be a citizen. See *United States v. Weber*, 185 F.2d 479 (7th Cir. 1950), *Smiley v. United States*, 181 F.2d 505, 506 (9th Cir. 1950). That result may well reflect the strict burden of proof in a criminal case, with the government obligated to prove the matter beyond a reasonable doubt. Here, the burden is on Avila to demonstrate that he did not represent himself to be a U.S. citizen, and therefore a representation that he was born in the United States might make that burden insurmountable. But we do not even have that much. There is no representation in the baptismal certificate that he was born in the United States. Only the city, not the state or country, is provided in the space for indicating the place of birth, in stark contrast to the place for recording the location of the baptism in which both a city and a state are transcribed. Nor is the city name an easily identified place such as Chicago or New York. The city name is "Harbor City," a rather generic city name that can be found in some form in multiple states of the United States as well as in other countries. To name just a few, there is a Harbor City that is a neighborhood of the city of Los Angeles, a Harbor, Oregon, an Egg Harbor in Wisconsin and New Jersey, Harbour Islands in Canada and the Bahamas, a Harbour View that is a community in Jamaica, and even a Harbor City in Hong Kong that is a large mall area which appears to include hotels as well as stores. There is nothing inherent in "Harbor City" that indicates the birthplace was in the United

States. Nor does the state of the baptism, California, add anything as that occurred nearly four months after the date of birth and is set forth on the certificate at a later part of the certificate from the listing of the birthplace. In fact, the inclusion of the state in the latter section and not the former is just as likely a means of distinguishing it. There is no evidence that any representation was made to the officials other than the presentation of the baptismal certificate, and therefore, the question is whether the listing of "Harbor City," without more, is a representation by Avila that he was a U.S. citizen. That is insufficient as a matter of law to constitute such a representation. It may have provided a reason to conduct a further inquiry, which could have led to a verbal representation by Avila that he was a United States citizen, but it does not in itself constitute such a representation. To hold otherwise would be to impose a permanent bar to admissibility based on speculation rather than any concrete representation. Given the drastic impact of the lifetime bar that follows from such a representation, we are loath to read it in so sweeping a manner as to include weak implications rather than the representations that the statute requires. The bare representation that he was born in Harbor City is not a representation of U.S. citizenship.

In fact, the Form I-213 and Notice of Visa Cancellation in this case support the conclusion that he did not represent himself to be a U.S. citizen because there is a noticeable absence of any reference to such a representation in those forms. That contrasts with the same forms discussed in myriad cases in which the forms explicitly

detail that representations of U.S. citizenship were made. For instance, in *Shmyhelskyy v. Gonzales*, 477 F.3d 474, 479 (7th Cir. 2007), we quoted Form I-213 as stating that Shmyhelskyy "'applied for admission into the United States from Mexico *by claiming to be a United States citizen*.'" [emphasis added] Similarly, in *Zarate v. Holder*, 671 F.3d 1132, 1136 (9th Cir. 2012), the court noted that "[t]he Form I-213 states that '[a]t [the] time of applying for admission to the United States, [Gomez] presented a "Notification of Birth Registration" document from the state of New Mexico *and claimed to be a citizen of the United States*.'" [emphasis added] See also *Barradas v. Holder*, 582 F.3d 754, 758-59 (7th Cir. 2009) (noting that Form I-831 and Form I-213 reflected that Barradas gave U.S. certificates to the children he was transporting and coached them to say that they were U.S. citizens). In contrast, the Form I-213 and Notice of Visa Cancellation here contain no such allegations of any representation to U.S. citizenship, nor do they relate any statements from Avila to that effect. In fact, there is nothing at all in those forms that indicated the officials perceived the baptismal certificate as a claim of U.S. citizenship. Form I-213 simply states that Avila made application for entry into the United States by presenting a baptismal certificate given by friends. The Notice of Visa Cancellation similarly provides that Avila "attempted to enter into the United States from Mexico, afoot, via the San Ysidro Port of Entry presenting an entry document belonging to another. Subject was allowed to withdraw in lieu of exclusion proceedings and was returned to Mexico." The language of those forms is more reflective

of § 1182(a)(6)(C)(i) which denies admissibility to any person who, by fraud or willfully misrepresenting a material fact, seeks to procure admission into the United States, rather than the § 1182(a)(6)(C)(ii) ground of inadmissibility for any person who falsely represents himself to be a citizen of the United States. The former ground can be waived, but the false representation of citizenship cannot be waived. See 8 U.S.C. §§ 1182(a)(6)(C)(iii), 1182(i). There is absolutely nothing in the forms indicating that the officials considered Avila's conduct to constitute a false representation of citizenship.

Because the baptismal certificate is not sufficient to constitute a representation of U.S. citizenship, and the government forms include no evidence that any such representation was made or perceived, it cannot be the basis for either removal or a finding of inadmissibility. Accordingly, Avila has met his burden of demonstrating that he is not inadmissible for falsely representing himself to be a U.S. citizen, and therefore the matter must be remanded for consideration of whether he should be granted the discretionary relief from removal in the form of adjustment of status.

In light of that holding, there is no need to address Avila's other challenges, with the exception of the denial of his motion to reopen. In his motion to reopen, Avila sought to reopen removal proceedings so he could submit a new application for relief in the form of withholding of removal and the United Nations Convention Against Torture, and Other Cruel, Inhuman, or Degrading

Treatment or Punishment, 23 I.L.M. 1027 (1984) (CAT). We review the BIA's denial of the motion to reopen for abuse of discretion. *Xiao Jun Liang v. Holder*, 626 F.3d 983, 988 (7th Cir. 2010). Avila argues that the BIA did not address his claim to reopen based on CAT or for withholding of removal, but instead denied reopening based on its conclusion that he failed to present a meritorious claim of asylum even though he never pursued such a claim in the motion to reopen.

We will uphold the BIA's denial of a motion to reopen "'unless it was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.*, quoting *Mansour v. INS*, 230 F.3d 902, 907 (7th Cir. 2000). The BIA—mistakenly, according to Avila—believed that Avila also presented a claim for asylum, and addressed the three claims (CAT, asylum, and withholding of removal) together in language directed to the asylum claim rather than articulating the legal reasoning as to those claims separately. That approach is problematic, and if we were unable to determine the BIA's reasoning for its decision as to each claim we would need to remand it. That is not necessary in this case, however, because the BIA made clear in the motion to reconsider its denial of reopening that its reasoning applied to the CAT and withholding of removal claims as well, and Avila has failed to demonstrate any error of law in the BIA's decision.

Avila argued that he was entitled to seek withholding of removal on the basis that his life or freedom would

be threatened on account of a protected ground, or that he was entitled to protection under the CAT. The BIA denied the request to reopen because Avila had not presented sufficient evidence to establish his membership in a particular group, and because his evidence described a general atmosphere of violence in Mexico but did not mention Avila or describe any individualized risk that he may face upon return. As the BIA emphasized on reconsideration of the denial of reopening, the requirement that the violence be directed at him based on his race, religion, nationality, membership in a particular social group, or political opinion, is the same for withholding of removal as for asylum. See *Mustafa v. Holder*, 707 F.3d 743, 750-51 (7th Cir. 2013) (recognizing that membership in a particular group is required for both and noting that qualification for withholding of removal requires an applicant to meet a higher standard than for asylum). Accordingly, the failure to properly identify the nature of the claim does not require reversal because on appeal, Avila has failed to even argue that the BIA's conclusion was wrong, and has failed to identify a membership in any particular group. The BIA therefore addressed the withholding of removal claim and properly held that it lacked merit.

The BIA also denied the motion to reopen to assert a CAT claim, holding that Avila had asserted only generalized violence in Mexico but had not even alleged any individualized danger. On appeal, Avila once again has failed to demonstrate any individualized risk of harm, choosing instead to argue that generalized evidence of danger is sufficient. We have repeatedly recog-

nized that the level of overall danger in a country is not a sufficient basis to find persecution, and that the petitioner must demonstrate that he or she is likely to be singled out. *Toure v. Holder*, 624 F.3d 422, 428-29 (7th Cir. 2010); *Raghunathan v. Holder*, 604 F.3d 371, 377-78 (7th Cir. 2010). The CAT standard is a higher threshold than that of asylum, and therefore the failure to meet the asylum standard forecloses relief under CAT as well. *Pathmakanthan v. Holder*, 612 F.3d 618, 625 (7th Cir. 2010); *Restrepo v. Holder*, 610 F.3d 962, 965 (7th Cir. 2010). Avila has failed to provide any evidence that he will be singled out, and therefore the BIA did not err in refusing to grant reopening to allow Avila to proceed with the CAT claim.

Avila raises no other meritorious issues. For the reasons stated above, we reverse the determination of the BIA that Avila failed to demonstrate that he is not inadmissible because he represented himself to be a U.S. citizen. Accordingly, we GRANT the petition for review, VACATE the BIA's dismissal and REMAND Avila's case for proper consideration of his request for relief from removal and application for adjustment of status on the merits. Costs are awarded to the petitioner.