In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-2063

NIKOLAY ZYAPKOV,

*Petitioner*,

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A088-671-259

ARGUED DECEMBER 16, 2015 — DECIDED MARCH 29, 2016

Before MANION, KANNE, and WILLIAMS, *Circuit Judges*.

MANION, *Circuit Judge*. Nikolay Zyapkov, a Bulgarian citizen, applied to become a lawful permanent resident based on his marriage to a U.S. citizen. An immigration judge denied that application in a decision upheld by the Board of Immigration Appeals. Zyapkov petitions for review of the Board's decision, but we conclude that his challenges to that decision are without merit.

**I. Background**

Zyapkov entered the United States in 2002 with a six-month visitor's visa. His daughter and ex-wife had come to the United States two years earlier, and both eventually obtained citizenship through the "diversity lottery," which allows randomly selected entrants from countries with low immigration rates to apply for permanent residency. *See, generally*, 8 U.S.C. § 1153(c); *Nyaga v. Ashcroft*, 323 F.3d 906, 907–09 (11th Cir. 2003). Three months after Zyapkov's arrival, he married Juanita Gregory, a U.S. citizen.

From that point Zyapkov's efforts to remain in the United States became tangled, as both Gregory and later his daughter (after becoming a citizen in February 2010) filed Form I-130 petitions on his behalf. An approved I-130 petition would have verified Zyapkov to be an immediate relative of Gregory or his daughter, *see* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i); 8 C.F.R. § 204.1(a)(1), and thus allowed him to apply for permanent residency using a Form I-485, *see* 8 U.S.C. § 1255(a). Gregory's I-130 petition was still pending in 2008 when the Department of Homeland Security served Zyapkov with a Notice to Appear in removal proceedings accusing him of overstaying his visitor's visa and working as a long-haul truck driver without authorization. *See* 8 U.S.C. § 1227(a)(1)(B), (a)(1)(C)(i). Soon after that, Gregory's I-130 petition was denied by United States Citizenship and Immigration Services ("USCIS") because that agency's investigators had concluded that Gregory's marriage to Zyapkov was a sham intended to gain him immigration benefits.

*See id.* § 1154(c)(2). Later, though, in September 2010, USCIS approved the daughter's I-130 petition.

USCIS's finding of marriage fraud relied heavily on its conclusion that Gregory was in a relationship, and sharing an apartment, with another woman while purportedly married to Zyapkov. Neighbors, as well as the woman's brother, had confirmed the relationship to investigators, and the names of both women were on the mailbox at the apartment. Gregory also had contradicted herself about her marital status, first telling USCIS investigators that she and Zyapkov were separated and later saying in a written statement that the couple remained married but she stayed with the other woman when Zyapkov was on the road. Investigators had visited the address on Gregory's state-issued identification card, where an owner of the house claimed that he was letting Zyapkov and Gregory live for free in several rooms because they were poor. Yet a neighbor who was shown photographs identified the woman seen at the house with Zyapkov as his *ex*-wife, not Gregory. And the investigators had noted that the rooms purportedly made available to Zyapkov and Gregory were being renovated and appeared to be unoccupied, e.g., the refrigerator and kitchen cabinets were empty, as were the bedroom closets.

After USCIS denied Gregory's I-130 petition, Zyapkov sought a continuance of the removal proceedings in order to challenge that decision. His daughter's I-130 petition had not yet been granted, and without an approved I-130 petition he could not take the next step of applying to adjust his status to permanent resident. More significantly, the finding of marriage fraud, if left unchallenged, would make Zyapkov statutorily inadmissible, *see* 8 U.S.C. § 1182(a)(6)(C)(i), and

thus ineligible for permanent residency whether or not his daughter's I-130 petition should be approved.

The immigration judge ("IJ") denied the requested continuance and ordered Zyapkov removed. The Board dismissed his appeal in August 2010, which, by leaving the finding of marriage fraud undisturbed, might appear to have ended the matter. But the following month, with his daughter's approved I-130 petition now in hand, Zyapkov asked the Board to reopen the removal proceedings and also filed a Form I-485 seeking to adjust his status to permanent resident. In December 2010 the Board granted the motion to reopen and instructed the IJ to determine Zyapkov's "statutory eligibility and discretionary worthiness" to remain in the United States. The Board reasoned that the daughter's approved I-130 petition appeared to make Zyapkov eligible for adjustment of status, though it said nothing about the finding of marriage fraud or the resulting bar to admissibility.

On remand the IJ conducted five hearings from December 2010 to January 2013 on Zyapkov's application for adjustment of status. In opposing that application, the government relied on USCIS's conclusion that Zyapkov had tried to gain immigration benefits by entering into a sham marriage with Gregory. Zyapkov countered with his own testimony that the marriage was genuine. Gregory is not a lesbian, he insisted, nor had they ever been separated. They lived together, Zyapkov explained, although working as a truck driver takes him out of town for long stretches. He and Gregory share bank accounts and credit cards, said Zyapkov, though mostly they pay for expenses in cash.

Gregory also testified, but she contradicted Zyapkov. She said they were separated from 2006 to 2008. She also explained that, when they first had met, she and Zyapkov communicated by using a computer to translate between English and Bulgarian. Because of his job, though, she sometimes would see him only two or three times a month. She denied being in a lesbian relationship.

Zyapkov's daughter was available to testify, but instead his lawyer proffered that the daughter stood by her I-130 petition. The IJ questioned, though, how USCIS could have granted the daughter's petition, except unwittingly, after denying Gregory's I-130 petition because of marriage fraud.

The IJ denied Zyapkov's application to adjust his status to permanent resident and also denied relief from removal. The IJ first pointed out the inconsistencies in Zyapkov's and Gregory's accounts about where they had lived and whether they had separated. The IJ acknowledged Zyapkov's assertion that these inconsistencies could be explained by his frequent work-related absences, but the IJ found that explanation neither "convincing" nor "persuasive." The IJ opined that Zyapkov had not explained "how he supports his wife and even where he keeps his income from his business" because the couple's joint accounts showed minimal deposits. Based on the evidence, the IJ agreed with USCIS's finding that Gregory's marriage to Zyapkov was a sham. And that sham marriage coupled with Zyapkov's false testimony, the IJ reasoned, meant that Zyapkov was inadmissible under § 1182(a)(6)(C)(i) and therefore ineligible to adjust his status.[1]

_____

[1] Although Zyapkov was not charged in the Notice to Appear with fraud under § 1182(a)(6)(C)(i), the IJ could rely on fraud as a ground of inadmissibility, and thus ineligibility to adjust status, because the question of

As an alternative basis for denying relief, the IJ concluded that Zyapkov did not merit a favorable exercise of discretion even if eligible.

Zyapkov, through counsel, appealed the IJ's decision but did not submit a brief. His notice of appeal to the Board says only that the IJ did not "adequately consider the basis" for adjustment of status because, in his view, the IJ put too much weight on his marriage and "unfairly punished" him for "an allegation of prior marriage fraud, without the examination of any of the Government's witnesses who claimed knowledge of an alleged fraud."

The Board dismissed the appeal, giving this explanation:

> We will assume for purposes of the appeal that the Immigration Judge erred in finding marriage fraud pursuant to section 204(c) of the Act, 8 U.S.C. § 1154(c), and in deeming the respondent inadmissible under section 212(a)(6)(C)(i) of the Act [8 U.S.C. § 1182(a)(6)(C)(i)], and we will assume for purposes of the appeal that the respondent is statutorily eligible to adjust his status under section 245(a) of the Act [8 U.S.C. § 1255(a)]. We agree, however, with the Immigration Judge's denial of the respondent's applications for both adjustment of status and voluntary departure in the exercise of discretion.

---

Zyapkov's removability—which he conceded because he overstayed his visitor's visa as charged in the NTA—is separate from his burden to prove eligibility for an adjustment of status. *See Matovski v. Gonzales*, 492 F.3d 722, 737–39 (6th Cir. 2007).

The Board noted that it "weigh[ed] heavily against" Zyapkov "that his marriage has been deemed not bona fide" and concluded that he had "not presented sufficient positive equities" to outweigh that finding.

## II. Analysis

Zyapkov has petitioned for review, and the parties are in agreement that we review the *IJ's decision* as supplemented by the Board. *See Pawlowska v. Holder*, 623 F.3d 1138, 1141 (7th Cir. 2010); *Ssali v. Gonzales*, 424 F.3d 556, 561 (7th Cir. 2005). On that understanding, we conclude that the Board, although skipping without explanation the question of Zyapkov's eligibility to adjust status, left intact the IJ's finding of inadmissibility under § 1182(a)(6)(C)(i). The parties' positions are vague but appear to be in line with our reading of the Board's decision: The government says that the Board simply assumed that Zyapkov was eligible for adjustment of status, while Zyapkov directly challenges the IJ's finding of *ineligibility*. We start with that question.

### A. *Zyapkov was ineligible for adjustment of status.*

Section 1255(a) of Title 8 provides that an alien is eligible to seek adjustment of status only if *admissible* into the United States, but Zyapkov's misrepresentations about his marriage would have made him inadmissible under § 1182(a)(6)(C)(i). Only after an alien has established eligibility to adjust his status does an IJ have discretion to grant that relief. *Munoz-Avila v. Holder*, 716 F.3d 976, 977–78 (7th Cir. 2013); *Kimani v. Holder*, 695 F.3d 666, 668 (7th Cir. 2012). The question of admissibility is important for Zyapkov, not only as it relates to his present eligibility to adjust his status, but also because a determination of inadmissibility under § 1182(a)(6)(C)(i) will

permanently bar Zyapkov from readmission to the United States. *See Nguyen v. Mukasey*, 522 F.3d 853, 855 (8th Cir. 2008); *Singh v. Gonzales*, 451 F.3d 400, 402–03 (6th Cir. 2006); *Ymeri v. Ashcroft*, 387 F.3d 12, 18 (1st Cir. 2004).

In most circumstances, it might be appropriate to bypass the question of admissibility—as the Board seems to have done here—and address only whether the IJ committed legal or constitutional error in exercising discretion to deny adjustment of status. *See Jankovic v. Lynch*, 811 F.3d 265, 266 (7th Cir. 2016); *Darif v. Holder*, 739 F.3d 329, 337 (7th Cir. 2014); *Alsagladi v. Gonzales*, 450 F.3d 700, 701 (7th Cir. 2006). But given the permanent bar to admission we address Zyapkov's argument that his marriage to Gregory was not fraudulent. *See I.N.S. v. Bagamasbad*, 429 U.S. 24, 26–27 (1976); *Patel v. I.N.S.*, 811 F.2d 377, 381 (7th Cir. 1987); *Kirong v. Mukasey*, 529 F.3d 800, 803 (8th Cir. 2008). And the IJ's finding that Zyapkov is statutorily ineligible for adjustment is fully reviewable. *See Hussain v. Mukasey*, 518 F.3d 534, 536 (7th Cir. 2008); *Parlak v. Holder*, 578 F.3d 457, 462–63 (6th Cir. 2009).

Zyapkov argues that the IJ failed to make an independent determination based on the record and, instead, accepted the government's version of events while ignoring his evidence that the marriage was bona fide. We disagree. The IJ permissibly accepted USCIS's denial of Gregory's I-130 petition as evidence that the couple's marriage was fraudulent. *See Antia-Perea v. Holder*, 768 F.3d 647, 656–58 (7th Cir. 2014) (explaining that to be admissible evidence must be at least probative and reliable); *Pouhova v. Holder*, 726 F.3d 1007, 1011 (7th Cir. 2013); *Malave v. Holder*, 610 F.3d 483, 487 (7th Cir. 2010). What's more, the results of USCIS's investigation was not the only evidence before the IJ: Both Zyapkov and

Gregory testified, and the IJ pointed out that they could not
agree about where they had lived and whether they had
separated. Zyapkov ignores that the IJ found him not credi-
ble, and concluded that prolonged absences because of his
work as a truck driver did not explain these inconsistencies,
and further that Zyapkov had not explained how he sup-
ports his wife financially or where he deposits his income.
Thus, substantial evidence supports the IJ's finding that
Zyapkov committed marriage fraud. *See Surganova v. Holder*,
612 F.3d 901, 903–04 (7th Cir. 2010) (explaining that finding
of marriage fraud must be supported by record evidence
that is reasonable, substantial, and probative); *Vladimirov v.
Lynch*, 805 F.3d 955, 960–62 (10th Cir. 2015) (denying petition
for review where substantial evidence of marriage fraud in-
cluded inconsistent statements about relationship).

### B. The IJ committed no legal error in denying adjust-
ment of status.

Since Zyapkov is inadmissible, he is ineligible for ad-
justment of status. But even assuming eligibility, as the
Board did, there was no legal or constitutional error in the
IJ's exercise of discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(i),
(a)(2)(D); *Sokolov v. Gonzales*, 442 F.3d 566, 569–70 (7th
Cir. 2006); *Mele v. Lynch*, 798 F.3d 30, 31–33 (1st Cir. 2015).
Zyakpkov argues that he was denied due process because, in
his view, the IJ "accorded an over-abundance of weight to
the Government's claims based on an alleged on-sight inves-
tigation."

But there is no due process right to discretionary relief.
Instead we review the legal sufficiency of the removal pro-
ceeding. *See Darif*, 739 F.3d at 335–36; *Delgado v. Holder*,
674 F.3d 759, 765–66 (7th Cir. 2012). Zyapkov contends that

the proceeding was inadequate because the government did not call the investigators to testify about their determination that he committed marriage fraud. Thus, he says, he didn't have opportunity to cross-examine the investigators and refute their conclusion. Yet Zyapkov was free to, but did not, seek approval from the IJ to subpoena the investigators himself. *See* 8 U.S.C. § 1229a(b)(1); 8 C.F.R. § 1003.35(b)(1), (2). And he points to no regulation requiring the government to call its investigators to testify. The burden was on Zyapkov to prove himself admissible and eligible for discretionary relief, as well as to present positive equities that would warrant a favorable exercise of discretion. *See* 8 C.F.R. § 1240.8(d); *Dakura v. Holder*, 772 F.3d 994, 998 (4th Cir. 2014) (alien carries burden for showing admissibility and eligibility); *Matovski*, 492 F.3d at 739 (alien carries burden of presenting positive equities). Zyapkov had multiple opportunities over two years to present evidence of his truthfulness—including six hearings before the IJ—but his evidence and testimony were unconvincing. *See Ortiz-Estrada v. Holder*, 757 F.3d 677, 679 (7th Cir. 2014) (explaining that alien challenging legality of removal hearing must show he was denied a reasonable opportunity to present evidence and that he was prejudiced); *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007) (same).

Accordingly, we DENY the petition for review.